By the Court :
The complainant claims under an entry made in May, 1797, in the name of Timothy Peyton, in the following words: “Timothy Peyton (heir) enters one thousand acres of land, on part of a military warrant, No. 1,296, on the waters of Three-mile creek, beginning at the most westwardly corner of' William Love’s entry, No. 2,712, running with his line north forty six degrees east passing his corner to the line of Thomas Perkins’ entry, 2,798, thence with his line north sixty degrees west to his corner, thence north thirty degrees east to another corner in the line of Isaac Hite’s survey, 1,759, thence north sixty degrees west so far that a line north sixty degrees west from the beginning, at right angles with the line north thirty degrees east, .will include the quantity.
*The defendants claim under an entry made in 1796, in the name of John Bartlett, and are in possession under the oldest patent. This being the case, they can not be disturbed till the complainant makes out an equitable title, clearly and satisfactorily. The merits of that title must therefore be first investigated.
It is very evident that the call for the waters of Three-mile creek, though a good descriptive call, is too vague and uncertain to ascertain the locality of the land intended to be covered by the entry; recourse must therefore be had to the other objects referred to. Love’s entry, a corner of which is called for as a beginning, calls for the lower corner of Jacob Edwards, in the line of P. Slaughters survey. Edwards calls for Slaughter’s survey, which lies opposite the mouth of Limestone, and is admitted to be special and abundantly notorious. The complainant has, therefore, succeeded in establishing his beginning corner. But this is not enough. As he calls to run from his beginning, with the line of Love’s entry, to the line of Perkins’ entry, without giving the distance, the ter *220 ruination of his first line can not be known, without establishing and locating the lines of the entry by which it is to be bounded, as it is taken for granted that the lines of every entry are open and can not be ascertained without a survey.
On looking into the entry of Perkins, we find it depends altogether on the survey of H. Brooks. H. Brooks’ survey depends on other surveys called for, which surveys depend on the survey of Samuel Hopkins. Hopkins’ survey calls for the southeast corner of Oallohill Minnis’ survey, No. 460, and depends on it, consequently it is indispensably necessary, for the complainant to establish this survey of Minni's, in order to sustain his own entry.
It appears that the intermediate entries called for have been correctly surveyed, so that no difficulty arises from that source. The right of the complainant to question the defendants’ title, must therefore depend on the validity of Minnis’ survey, No. 460, as that claim must be correctly located and established before he can ascertain the termination of his first line.
*Minnis’ survey calls to lie “on the northwest of the Ohio, on the waters of Three-mile creek, beginning at a walnut marked H. and two sugar trees, on the bank of the creek, .running north thirty east four hundred poles,” etc.
It must be evident, that this survey does not contain the precision and certainty in its calls that is necessary to enable a subsequent locator to ascertain its situation. The waters of a creek and a marked tree on the bank of the creek, is too general a description. It imposes on the inquirer the necessity of examining the timber on both sides of the creek, from its mouth to its source. The length of this creek does not appear, but from circumstances it must be of considerable extent. It is called by way of distinction Big Three-mile, and the witnesses speak of several branches which empty into it. ’The valley of such a creek must be too extensive to be searched by subsequent locators, for the purpose of finding a marked tree; and without that tree, the beginning corner of the survey can not be determined.
But the complainant rather relies on the entry, which he contends has been surveyed in strict conformity with its calls, and which is in these words, “Oallohill Minnis enters one thousand acres,” etc., on the waters of the first creek emptying into the Ohio below Limestone, beginning at a walnut marked IH, by a branch, where the left wing of Colonel Robert Todd’s scout crossed in June, 1787 running *221 north thirty east four hundred poles, etc. Although the survey appears to have been made in strict conformity with the courses and distances of the entry, yet we discover a striking difference in the calls. The entry calls for the first creek below Limestone, and for a walnut marked IHbya branch. The survey calls for Three-mile creek and for a walnut marked H, on the bank of the creek. This discrepancy was calculated to produce doubt and uncertainty. It imposed on the inquirer the task of deciding what streams were denominated creeks, in order to ascertain whether Three-mile was, or was not, the first creek. But suppose this difficulty overcome. Is he to look for a walnut market H, on the bank of the creek, or for a walnut marked I H, by a branch of the creek, and if he should find either, how is he to know whether it be the right one or not?
*But we will pass over these difficulties for the present, and examine ithe entry on which the complainant relies, without reference to the terms used in the survey.
1. It calls for the waters of the first creek emptying into the Ohio below Limestone.
2. For a walnut marked I H.
3. For the branch where the left wing of Colonel Todd’s scout crossed in 1787.
1. Ellis Palmer states that Minnis’ survey was on Big Three-mile creek, which was always said to be three miles below Limestone. On being asked if it was not the first creek, that empties into the Ohio below Limestone, he answers, “it is, except Fishing-gut, so called, which is the first below Limestone on the Ohio side.” He further states that he never knew it call by any other name than Fishing-gut.
James Pilson being asked the name of the first creek below Limestone answers, “ Fishing-gut is the first that would be called a creek.” He further states that it is not a large stream; that he does not know its length ; that there is a mill on it; that he always heard it called Fishing-gut; believes he should call it a large branch ; that it empties about two miles above Big Three-mile.
N. Beasley states that the first creek on the north side of the Ohio below Limestone creek is called Fishing-gut; that it went by that name in 1791; that according to his apprehension Fishing-gut is of such size and description as to entitle it to the appellation of a creek; that it is such as surveyors have been in the habit of call *222 ing creeks, and that it empties better than two miles above Three-mile creek.
On this evidence the complainant relies to establish the notoriety of Three-mile as the first creek below Limestone; but instead of proving that fact, it rather shows it to be thosecond creek. On such information, a subsequent locator would naturally go on to Fishing-gut in search of Minnis’ survey, the beginning corner of which is said to be at least five miles from the nearest point of that stream: The witnesses all speak of it as a creek, though they do not remember of hearing it expressly called so. General Beasley, who has been a surveyor many years, calls it a creek, and states • *that in size and description it is such a stream as surveyors have been in the habit of calling a creek. If it be urged that its appropriate name was Fishing-gut, it may be replied that the appropriate name of the other was Big Three-mile, and a person hearing their names would naturally consider them both to be the names of creeks. There is no evidence to show that Three-mile was understood to be the first creek below Limestone, or that it was known by that name among locators, or others, either when the entry in question was made, or at any time since.
Palmer states that in 1787, it was known by the name of Big Three-mile, probably to distinguish it from a smaller stream in the neighborhood, known by the same name. In the survey, it is simply called Three-mile creek, which varies both from the description in the entry, and from the real name, as proved by all the witnesses.
Here naturally arises the question, why was the watercourse designated in the entry by a description, when it had an appropriate name, notorious in the contiguous settlements? If Minnis’ entry was really on the creek claimed, it ought to have been called Big Three-mile, which was at that time its appropriate name, and by which subsequent locators might have readily found it, as that name not only identified the watercourse, but was expressive of its true situation in reference to the mouth of Limestone. By omitting the name and describing it as the first creek, subsequent locators were not merely left in doubt and uncertainty, but were liable to be misled and thrown onto Fishing-gut, which, from the weight of evidence, might fairly be considered as a creek, and the first creek below Limestone.
The next call is for a walnut marked I H.
*223 Palmer states that at the beginning corner of Minnis’ survey there was a walnut marked, which he saw within a few minutes after the corner was made; that there were letters on it, but he does not remember what they were, though he says he saw the tree every year afterward for more than twenty years.
Benjamin Beasley settled in Manchester in 1790. Shortly after, he heard of the tree spoken of by Palmer. It does not appear that he ever saw it; he gives no description of it, *nor does he know anything of the letters by which it was distinguished in the entry of Minnis.
General Beasley states that he became acquainted with the beginning corner of Minnis’ survey in 1803; that he has seen it several times and has surveyed from it, but that he never saw any letters on it, and that it is five miles from the nearest point on Eishing-gut creek.
James Pilson has seen the walnut on Big Three-mile, claimed as the corner of Minnis’ entry, and has made a survey from it. He thinks he saw the marks on it, but can not tell what they were.
This is all the evidence relating to that point, and it certainly falls very far short of establishing the notoriety of the tree in question.
The entry calls for a walnut marked I H; the survey calls for a walnut marked H. The witnesses, except Palmer, do not know that the tree claimed by the complainant to be Minnis’ corner was ever marked with any letters, and Palmer does not know that it was marked with either of the letters named in the entry. As walnut is a common timber in the part of the country where the land lies, and particularly on watercourses, the call for a tree of that description is of but little use, unless it be distinguished by some peculiarity generally known, of which information can be obtained in the contiguous settlements, and by which it can be distinguished from other trees of the same kind. It is therefore necessary to prove that the tree in question contained the distinguishing marks described in Minnis’ entry, and that it had acquired general notoriety at the date of the complainant’s entry.
The third call is “the branch where the left wing of Col. Todd’s scout crossed in 1787.”
Palmer states that the trace was generally known by the nama of Todd’s trace, and was plain enough to be followed.
*224 Benjamin Beasley says that shortly after he came to Manchester, in 1790, he heard of Todd’s trace running up Three-mile creek. The scout crossed at the mouth of Limestone, which was a place of general notoriety, and the trace commenced on the bank of the river opposite the mouth of that *creek. Before, and down to the time of that expedition, the trace appears to have been known by the name of the old war road.
We will concede for the present that these witnesses prove the notoriety of the trace, and proceed to inquire whether this call is in other respects sufficiently sustained.
1. The entry refers to a trace running up the first creek below Limestone. In addition to what has already been said on this part of the case, we will only remark that if Fishing-gut is to be considered the first creek, the call for a trace on a different creek can not help the entry.
2. The entry calls for an object by a branch of the creek; the survey calls for the same object on the bank of the creek.
The entry calls for the corner by a branch, where the left wing of the scout crossed, not for the trace which must have been followed by the main body of the detachment, and which crossed the creek.
From the very terms used it is apparent that the corner was not on the trace spoken of by the witnesses as being plain and notorious, but at some point on a branch where one of the wings crossed. How far the left wing marched from the trace, or at what point they left it, is uncertain, nor does it appear that there was anything to designate the route of that wing, by which a surveyor could be enabled to follow it so as to ascertain where it crossed the branch, nor does it appear at what distance, or in what direction the branch was from any given object. This circumstance seems to account for the discrepancy between the corner called for in the entry and the one from, which the survey was made. The latter is on the bank of the creek, where the trace most probably passed; the former is by a branch, where the left wing crossed; but what branch, or how far from its mouth, or from the trace, is altogether uncertain.
The survey of Minnis appears at this day to have acquired very general notoriety, but that was not the fact when Peyton’s entry was made.
*225 On the whole, we are of the opinion that the complainant has not sustained the equitable claim set out in his bill.
-¡Tt is, therefore, unnecessary to examine the case on the part of the defendants.
Bill dismissed.